**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. _____**

| | |
|---|---|
| CHARLOTTE-MECKLENBURG COMMUNITY RELATIONS COMMITTEE, *on behalf of Harmony Lowery*, <br><br> Plaintiff, <br><br> v. <br><br> CUSA NC HOLDINGS, LP, STEVE MOORE, SAMANTHA MORRISON, CAMDEN DEVELOPMENT, INC., <br><br> Defendants. | **DECLARATION OF VICTORIA S. TOLBERT IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL** |

I, Victoria S. Tolbert, pursuant to 28 U.S.C.§ 1746, hereby declare:

1.      I have personal knowledge of the following facts and, if called as a witness herein, could and would testify to their accuracy.

2.      I am an attorney admitted to practice in the State of North Carolina and I am admitted to appear before this Court.  I am a counsel of the law firm Seyfarth Shaw LLP, counsel of record for Defendants CUSA NC Holdings, LP, Steve Moore, Samantha Morrison, and Camden Development, Inc. (collectively, "Defendants") in the above-captioned matter filed on behalf of Plaintiff Charlotte-Mecklenburg Community Relations Committee ("Plaintiff") (collectively, the "Parties").  As counsel for Defendants, all of the pleadings and other records are maintained in my office in the ordinary course of business under my direction and control.

3.      On or about April 15, 2025, Plaintiff filed its Complaint in the North Carolina Superior Court for Mecklenburg County entitled *Charlotte-Mecklenburg Community Relations*

*Committee v. CUSA NC Holdings, LP, et al*, Case No. 25-CV-019059-590 ("State Court Action"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**. This constitutes all process, pleadings, and orders received by Defendants concerning the State Court Action.

4.     In the Complaint, Plaintiff asserts claims for violation of the Federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq*. (*See* Exhibit A ¶¶ 46-57.)

5.     The Notice of Service of Process, attached hereto as **Exhibit B**, indicates that Defendants were served on April 21, 2025.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 20th day of May, 2025 at Charlotte, NC.


By:     */s/ Victoria S. Tolbert*_____
          Victoria S. Tolbert
          North Carolina State Bar No. 32945
          SEYFARTH SHAW LLP
          300 South Tyron Street, Suite 400
          Charlotte, North Carolina 28202
          Telephone: (704) 925-6042
          Facsimile: (704) 559-2457
          E-mail: vtolbert@seyfarth.com

          Attorney for Defendants

**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. _____**

CHARLOTTE-MECKLENBURG
COMMUNITY RELATIONS
COMMITTEE,
*on behalf of Harmony Lowery*,

                Plaintiff,

     v.

CUSA NC HOLDINGS, LP,
STEVE MOORE,
SAMANTHA MORRISON,
CAMDEN DEVELOPMENT, INC.,

              Defendants.

**CERTIFICATE OF SERVICE**

       I certify that on May 20, 2025, I filed the Declaration of Victoria S. Tolbert in Support of Defendants' Notice of Removal with the Clerk of Court via the Court's CM/ECF system and served a copy of same by the United States Postal Service on the following individual:

       Isaac Sturgill
       Office of City Attorney
       600 East 4th St., 7th Floor
       Charlotte, North Carolina 28202

                               */s/ Victoria S. Tolbert*
                               Victoria S. Tolbert

# EXHIBIT A

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

CHARLOTTE-MECKLENBURG
COMMUNITY RELATIONS COMMITTEE,
*on behalf of Harmony Lowery,*

Plaintiff

v.

CUSA NC HOLDINGS, LP,
STEVE MOORE,
SAMANTHA MORRISON,
CAMDEN DEVELOPMENT, INC.,

Defendants.

**COMPLAINT**
(Jury Trial Demanded)

Plaintiff Charlotte-Mecklenburg Community Relations Committee (the "CRC") brings these claims against Defendants CUSA NC Holdings, LP ("CUSA"), Camden Development, Inc. ("Camden Development"), Steve Moore ("Moore"), and Samantha Morrison ("Morrison") for violations of the federal Fair Housing Act of 1968, *as amended,* 42 U.S.C. § 3601 *et seq.,* North Carolina's State Fair Housing Act, N.C.G.S. § 41A-1 *et seq.,* and Section 12-111(1)-(4) of the City of Charlotte's Fair Housing Ordinance. Defendants discriminated against Plaintiff based on her race by wrongfully denying her application for an apartment using a blanket criminal background screening policy that has a disparate impact on Black applicants, including Plaintiff.

## PARTIES & JURISDICTION

1.    The CRC is a governmental agency created jointly by Mecklenburg County, North Carolina (the "County"), and the City of Charlotte, North Carolina (the "City"). The CRC is authorized to investigate fair housing violations and enforce federal, state, and local fair housing law. The CRC's principal office and place of business is in Mecklenburg County, North

Carolina.

2. Upon information and belief, Defendant CUSA is a North Carolina corporation with its principal office and place of business in Mecklenburg County, North Carolina.

3. Defendant CUSA owns the apartment located at 515 Jordan Pl., Apartment 216, Charlotte, NC 28205 (the "Subject Property").

4. Upon information and belief, Defendant Camden Development is a corporation formed under the laws of Delaware with its principal office in Houston, Texas. Upon information and belief, Camden Development managed the Subject Property as an agent of Defendant CUSA at all material times relevant to this proceeding.

5. Upon information and belief, Defendant Moore is a citizen and resident of Mecklenburg County, North Carolina.

6. Upon information and belief, Defendant Moore acted as an employee and property manager of the Subject Property for Defendant CUSA at all material times relevant to this proceeding.

7. Upon information and belief, Defendant Morrison is a citizen and resident of Mecklenburg County, North Carolina.

8. Upon information and belief, Defendant Morrison acted as an employee and property manager of the Subject Property for Defendant CUSA at all material times relevant to this proceeding.

9. Defendants lease the Subject Property, as well as other apartments, as residential real estate to the consuming public in Charlotte, North Carolina. In doing so, Defendants offer "dwellings" and "housing accommodations" for sale or rental within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602, and the North Carolina State Fair Housing Act, N.C. Gen.

2

Stat. § 41A-3.

10.     Personal jurisdiction over Defendants is authorized by N.C.G.S.§ 1-75.4(1) and
§ 1-75.4(6).

11.     Venue is proper here under Section 12-118 of Article V of Chapter 12 of the Code
of the City of Charlotte, 28 U.S.C. § 1391, and N.C.G.S. § 1-80 because Mecklenburg County is
where the cause of action arose and where the CRC is situated.

## GROUNDS FOR CRC AUTHORITY

12.     Chapter 6, Article VII of the Charter of the City (also Session Law 2000-26, 1999
North Carolina Session Laws) empowers the City to enact ordinances prohibiting discrimination
based on race, among other things, in real estate transactions. Pursuant to Chapter 6, Article VII,
such ordinances may create or designate a committee to enforce the ordinances and may grant to
the committee all authority the City deems necessary for the enforcement of the ordinances.

13.     The City has exercised its authority pursuant to Chapter 6, Article VII of the
Charter to enact Chapter 12, Article V of the Code of the City of Charlotte (the "Fair Housing
Ordinance"). The Fair Housing Ordinance prohibits various discriminatory acts with relation to
real estate transactions, including discrimination against a person based on race in renting
residential real estate.

14.     The Fair Housing Ordinance designates the CRC to enforce its provisions. The
Fair Housing Ordinance empowers the CRC to receive complaints alleging violations; to
investigate complaints; to attempt to conciliate matters when the CRC finds reasonable cause to
believe that an alleged violation has occurred; to hold public hearings on complaints when
conciliation efforts fail; and to file an action in Superior Court if, after a public hearing, the CRC
determines that the respondent in the complaint committed the alleged violation of the Fair

3

Housing Ordinance and a subsequent conciliation agreement has not been negotiated.

15. Under the Fair Housing Assistance Program ("FHAP"), the U.S. Department of Housing and Urban Development ("HUD") contracts with local agencies in the investigation and enforcement of fair housing laws. *See* 42 U.S.C. § 3616a.

16. Under an agreement with HUD, the CRC also has jurisdiction to investigate and enforce the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, which is substantially similar to the Fair Housing Ordinance and the North Carolina Fair Housing Act, N.C. Gen. Stat. § 41A-3 *et seq.*

## PROCEDURAL HISTORY

17. Harmony Lowery ("Ms. Lowery") timely filed an administrative fair housing complaint against Defendants with the CRC on May 23, 2023, within one year of the her most recent alleged fair housing violation.

18. CRC staff investigated Ms. Lowery's complaint and determined that there was reasonable cause to believe that Defendants had committed an unlawful act of discrimination by using a screening policy that has an unjustified discriminatory effect because of race.

19. The CRC completed its investigation of Ms. Lowery's complaint and issued a determination on November 24, 2023, that reasonable grounds existed to believe that Defendants committed unlawful discriminatory housing practices. A copy of the CRC's determination is attached hereto as **Exhibit A** and is incorporated by reference.

20. The CRC participated in conciliation efforts with Ms. Lowery and Defendants, but without success.

21. The CRC held a Public Hearing on April 11, 2024. The panel upheld the CRC's finding that reasonable grounds existed to believe that Defendants committed unlawful

4

discriminatory housing practices.

22.     The CRC participated in conciliation efforts with Ms. Lowery and Defendants again after the Public Hearing, but without success.

23.     Therefore, the CRC determined to file this action under the authority of 42 U.S.C. § 3601; N.C.G.S. § 41A-7; and Section 12-116(e)(5) of the Fair Housing Ordinance.

## FACTS

### A. The Denial of Ms. Lowery's Rental Application

24.     Ms. Lowery is a twenty-eight-year-old Black woman.

25.     On or around April 24, 2023, Ms. Lowery applied to rent the Subject Property from Defendants.

26.     Upon information and belief, Defendants use "Leasing Desk," a third-party screening company, to conduct background checks on applicants for income, credit, rental history, and criminal history.

27.     Upon information and belief, Defendants used Leasing Desk when evaluating Ms. Lowery's application.

28.     Upon information and belief, Defendants set the following policy with respect to criteria for applicants in 2021:

> Camden utilizes a criminal screening system to perform criminal screening on prospective applicants. The screening system takes into consideration criminal classifications which groups criminal offenses into various categories and the length of time between the conviction and application date. The following convictions are considered significant crimes which will be taken into consideration when evaluating an applicant's eligibility for rental: Felony convictions; Violence, family relations, sex-related misdemeanors convictions; and Violence, family relations, and sex-related unclassified convictions.

29.     Upon information and belief, Defendants and Defendants agents, when screening

5

Ms. Lowery and other applicants, utilized another screening policy in connection with the policy above. This policy is to deny any applicants who have had any convictions for any violent misdemeanors within the previous five years, regardless of any other circumstances.

30. Upon information and belief, the policies described above were in effect at the time Ms. Lowery applied for the Subject Property.

31. Upon information and belief, Defendants utilized these policies with respect to Ms. Lowery's application.

32. Ms. Lowery has a class 1 misdemeanor assault conviction from July 13, 2018. Upon information and belief, Ms. Lowery has no other criminal record. The conviction concerned an incident at school that involved one of Ms. Lowery's female classmates.

33. Ms. Lowery's case disposition date for that case was approximately four years and nine months from her April 24, 2023, application date, just shy of the mandatory, five-year cut off for criminal history Defendants use when screening tenants.

34. Upon information and belief, Defendants denied Ms. Lowery's application because of her class 1 misdemeanor assault conviction and refused to consider any mitigating circumstances when reaching their decision to deny, although Ms. Lowery tried to present mitigating circumstances to Defendants, including the fact that the conviction was almost five years old.

35. Upon information and belief, Ms. Lowery was otherwise qualified to rent the Subject Property based on the criteria set by Defendants.

36. Upon information and belief, defendants accepted an application on June 15, 2023, for the Subject Property from a person who identifies as a Caucasian woman.

37. Upon information and belief, the Subject Property remained unleased between the

6

time Defendants denied Ms. Lowery's application and June 15, 2023.

38.    The denial caused Ms. Lowery ongoing housing instability, despite her being otherwise qualified. The rejection caused increased financial strain for Ms. Lowery as she was faced to pay increased expenses for temporary shelter, food, property storage, and other expenses. The financial strain and emotional distress Ms. Lowery suffered as the result of the denial had a negative ripple-effect on her life, including the loss of a job due to the unpredictability of her situation.

**B.    Black people are arrested and convicted at a disproportionate rate in Mecklenburg County, North Carolina.**

39.    According to the Sentencing Project, the imprisonment rate in America in 2022 for Black women was 1.6 times the rate of imprisonment for white women. Black women are disproportionately arrested and convicted at higher rates than white women. One in five Black people born in the US is likely to be incarcerated in their lifetime, compared to one in ten Latinx people and one in twenty-nine White people. Black people are more likely to be stopped by the police, detained pretrial, charged with more serious crimes, and sentenced more harshly than White people.

40.    When looking at the Vera Institute of Justice's report, *Incarceration Trends in North Carolina,* jail data shows that from 1990 to 2015, the Black incarceration rate increased 13%. In 2015, Black people in North Carolina were incarcerated at 3.8 times the rate of White people.

41.    According to the Vera Institute of Justice's *Incarceration Trends for Mecklenburg County, North Carolina,* Black people make up 32% of the resident population in the county, but 68% of those in incarceration. Comparatively, White people make up 47% of the resident population, but only 21% of those incarcerated. This data shows the Black population is

7

incarcerated at more than three times the rate of the White population in Mecklenburg County.

**C.    Defendants' screening policy, which fails to follow HUD's guidance on the use of criminal records, has a disparate impact on Black people, including Ms. Lowery.**

42.    HUD's 2022 guidance encourages the use of an individualized approach to tenant screening on a case-by-case basis to assess the nature, severity, and recency of the crime, along with any rehabilitation efforts made. U.S. Dept. of Housing and Urban Development, "Implementation of the Office of General Counsel's Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions," June 10, 2022, HUDhttps://www.hud.gov/sites/dfiles/FHEO/documents/Implementation of OGC Guidance on Application of FHA Standards to the Use of Criminal Records - June 10 2022.pdf (last accessed April 9, 2025).

43.    Plaintiff's investigation into Ms. Lowery's administrative complaint revealed that Defendants did not conduct or engage Ms. Lowery in an individualized assessment that considered all of the factors listed in HUD's guidance but instead denied her application for the Subject Property based on Defendants' hardline rule to reject any applicants with a violent misdemeanor or felony conviction within the last five years.

44.    Defendants' screening policies with respect to criminal background have an actual and predictable disparate impact on Black individuals based on their race, including Ms. Lowery, because Black people are arrested and convicted at a disparate rate in Mecklenburg County. Under HUD's guidance, Defendants use of said screening policies is unlawful because it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of Defendants.

45.    In the alternative, Defendants' screening policies with respect to criminal background could be served by another practice that has a less discriminatory effect. Defendants

8

could replace their current policies that automatically exclude any applicant with a violent misdemeanor or felony conviction within the last five years and instead conduct an individual assessment of each applicant that provides each applicant an opportunity to show evidence of rehabilitation and considers the crime's nature, severity, recency, and other mitigating circumstances.

## FIRST CLAIM – Violation of the Federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*

46. Plaintiff incorporates the allegations of the paragraph above.

47. As a Black person and therefore on the basis of her race, Ms. Lowery is a member of a class protected by the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

48. At all times relevant hereto, Defendants were advertising, processing rental applications for, and renting "dwellings," including the Subject Property, as defined by 42 U.S.C. § 3602(b), and Defendants were subject to the Federal Fair Housing Act and Amendments (42 U.S.C.§§3601, *et seq.*).

49. Defendants, through their employees and agents, injured Ms. Lowery by committing one or more of the following discriminatory housing practices in violation of the Fair Housing Act.

    a.    Making unavailable or denying a dwelling to any person because of race, in violation of 42 U.S.C. § 3604(a); and

    b.    Discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, in violation of 42 U.S.C. § 3604(b);

9

50.     As a direct result of Defendants' conduct, Ms. Lowery suffered damages in excess of twenty-five thousand dollars ($25,000.00) in that she was wrongfully deprived of an apartment, suffered emotional distress, and suffered other damages.

51.     Both Ms. Lowery and the CRC, as a fair housing organization whose mission to promote fair housing has been frustrated and whose resources have been diverted due to Defendants' illegal acts, are each an "aggrieved person" under 42 U.S.C. § 3602.

52.     Plaintiff is entitled to monetary, declaratory, and injunctive relief under the Federal Fair Housing Act, 42 U.S.C. § 3613.

## SECOND CLAIM - Violation of the Federal Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*

53.     Plaintiff incorporates the allegations of the paragraphs above.

54.     Defendants' utilization of criminal background screening policies that automatically deny any applicant who has a conviction for a violent crime within the last five years, regardless of any mitigating circumstances, has a disparate impact on Black people, a protected class based on race under the Federal Fair Housing Act.

55.     As a direct result of Defendants' utilization of these screening policies, Ms. Lowery was wrongfully deprived of an opportunity to lease an apartment, suffered emotional distress, and suffered other damages.

56.     Both Ms. Lowery and the CRC, as a fair housing organization whose mission to promote fair housing has been frustrated and whose resources have been diverted due to Defendants' illegal acts, are an "aggrieved person" under 42 U.S.C. § 3602.

57.     Plaintiff is entitled to monetary, declaratory, and injunctive relief under the Federal Fair Housing Act, 42 U.S.C. § 3613.

## THIRD CLAIM – Violation of the State Fair Housing Act, N.C.G.S. § 41A-1 *et seq.*

58.     Plaintiff incorporates the allegations of the paragraphs above.

59.     Each Defendant injured Ms. Lowery by committing, directly or through their agents, discriminatory housing practices in violation of N.C. Gen. Stat. §§ 41A-4(a)(1), 41A-4(a)(2), 41A-4(a)(4), and 41A-4(a)(8).

60.     Ms. Lowery and Plaintiff are each a "person" pursuant to N.C.G.S. § 41A-3(5) and were injured in violation of the statutes above.

61.     Plaintiff is entitled to monetary, declaratory, and injunctive relief under the State Fair Housing Act, N.C.G.S. § 41A-1 *et seq.*

## FOURTH CLAIM - Violation of Charlotte's Fair Housing Ordinance, § 12-111(e)(1)-(4)

62.     Plaintiff incorporates the allegations of the paragraphs above.

63.     Sections 12-111(1)-(4) of the Fair Housing Ordinance make it unlawful, *inter alia*, to refuse to rent or otherwise deny a dwelling based on discrimination because of race and to discriminate against a person in the terms, conditions, or privileges of a rental unit because of that person's race.

64.     Defendants each violated §§ 12-111(1)-(4) of the Fair Housing Ordinance by their denial of Ms. Lowery's application and other acts described above.

65.     Defendants acts injured Ms. Lowery, as described above.

66.     Plaintiff is entitled to monetary, declaratory, and injunctive relief under Charlotte's Fair Housing Ordinance.

## JURY TRIAL REQUESTED

Plaintiff requests a trial by jury on all issues so triable.

11

## PRAYER FOR RELIEF

Therefore, Plaintiff prays this Court grants the following relief:

1. Awards compensatory damages in favor of Plaintiff and against Defendants, jointly and severally, in excess of twenty-five thousand dollars ($25,000.00) under each claim alleged herein;

2. Awards punitive damages under the federal Fair Housing Act only;

3. Declares that each defendant has violated the federal Fair Housing Act, the State Fair Housing Act, and Charlotte Fair Housing Ordinance;

4. Enjoins all unlawful practices complained of herein and imposes affirmative injunctive relief requiring each defendant and its partners and agents to take affirmative steps to counteract and cure their unlawful and discriminatory practices;

5. Awards reasonable attorneys' fees and costs; and

6. Awards any other relief deemed just by this Court.

This 15th day of April 2025.

OFFICE OF THE CITY ATTORNEY

/s/ Isaac Sturgill
Isaac Sturgill
NC Bar No. 44837
600 East 4th St., 7th Floor
Charlotte, NC 28202
(980) 417-3057
Isaac.sturgill@charlottenc.gov

*Counsel for Plaintiff Charlotte-Mecklenburg Community Relations Committee*

12

DocuSign Envelope ID: EE491703-C95E-4D48-94C4-86C003DF771E

Exhibit A



**CHARLOTTE.**
CHARLOTTE-MECKLENBURG
COMMUNITY RELATIONS COMMITTEE

November 24, 2023

### Determination

**Case Name:**     Harmony Lowery vs. Camden NoDa, et al.

**FHAP Case Number: FY23-39**

**HUD Case Number: 04-23-4915-8**

### I.     Jurisdiction

A complaint was filed with the City of Charlotte's Community Relations Department on May 23, 2023, alleging that the Complainant was injured by a discriminatory act. It is alleged that the Respondents were responsible for discriminatory refusal to rent and discriminatory terms and conditions. It is alleged that the Respondents' acts were based on race. Respondents are Camden Noda and Leasing Desk. The most recent act is alleged to have occurred on April 24, 2023, and is continuing. The complaint was timely filed on May 23, 2023. The subject property is an apartment complex located at 515 Jordan Pl, Apartment 216, Charlotte, NC 28205. The property in question is not exempt under the applicable statutes. If proven, the allegations would constitute a violation of the City of Charlotte's Fair Housing Ordinance, Article V, Sections 12-111(1), 12-111(4), and Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, Section 804(a), 804(b).

The Respondents receive no federal funding.

### II.     Complainant Allegations

Complainant Harmony Lowery identifies as an African American who applied for housing at Camden NoDa in April of 2023, completed all necessary paperwork, paid a $400.00 application/administrative fee, and was subject to a background check. The background check was conducted by a third-party company, Leasing Desk. Complainant Lowery alleges she called the Camden NoDa leasing office for information regarding her background check for over 2 hours, but there was no answer. On April 24, 2023, Respondent Samantha Morrison contacted Complainant Lowery by email advising her that her application for apartment 216 was denied due to unsatisfactory criminal and other public records and she would be receiving an email from Leasing Desk, the third-party company, regarding the results. Complainant Lowery spoke with Leasing Desk, and they provided her with a report which showed a 2018 misdemeanor assault conviction.

The Complainant stated Respondent Steve Moore told her that he would check with the leadership team and the legal department for clarity. Respondent Moore followed up with Complainant Lowery by email advising her that he spoke with counsel and the decision to deny her application was confirmed. Respondent Camden NoDa canceled the application and refunded Complainant Lowery the application fee, but not the administrative fee.

Complainant Lowery alleges the Respondent's use of criminal background checks to deny housing may cause a disparate impact on African Americans and therefore is discriminatory. In her case, she believes that Respondent Camden NoDa's decision was not based on her qualifications as a tenant, but rather on their prejudice against African Americans with a criminal record. If proven, the allegation(s) would constitute a violation of the City of Charlotte's Fair Housing Ordinance, Article V, Sections 12-111(4) Discriminating against a person in the terms, or conditions of a real estate transaction because of race and 12-111(1) Refuse to rent and Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, Sections 804(a) and 804(b).

## III.    Respondent Defenses

The Respondent stated the Complainant applied to rent an apartment located at 515 Jordan Place, Apartment 216, Charlotte, NC 28205 on April 24, 2023. At the time the Complainant applied for the apartment, she was provided with Camden NoDa's rental criteria. Upon screening the Complainant's application through Camden NoDa's third-party screening company, Leasing Desk, it was determined that the Complainant did not meet the criminal screening criteria due to a misdemeanor assault conviction from 2018, which was within five years of the date of the rental application.

Additionally, the Complainant was sent an adverse action letter on April 24, 2023, which advised the Complainant of the right to contact the third-party screening company to dispute any information in the screening report.

The Respondent stated Camden NoDa's criminal screening policy is narrowly tailored to achieve substantial, non-discriminatory interests in that it only considers criminal convictions and is not a blanket policy that rejects applicants for any criminal conviction.

## IV.    Findings

The investigation revealed Respondent Camden NoDa first opened its doors on February 3, 2023.

The investigation revealed in Exhibit 2 of the Respondent's response to the investigator that they have a rental criterion of 5 years from the date of an application for tenancy.

The investigation showed that Complainant Lowery signed an application on April 24, 2023, to rent an apartment from Respondent Camden NoDa at 515 Jordan Pl. Apartment 216, Charlotte, NC 28205.

The investigation confirmed that the Respondent provided the Complainant an adverse action letter from Leasing Desk dated April 24, 2023, stating they were unable to approve her application based on the following reason: Criminal and other public records unsatisfactory. Respondent Camden NoDa utilizes Leasing Desk to conduct an applicant's background check for income, credit, rental, and criminal history.

The investigation revealed that the Respondent's Rental Criteria and Application, effective October 1, 2021, states in section C. Criminal History: "Camden utilizes a criminal screening system to perform criminal screening on prospective applicants. The screening system takes into consideration criminal classifications which groups criminal offenses into various categories and the length of time between the conviction and application date. The following convictions are considered significant crimes which will be taken into consideration when evaluating an applicant's eligibility for rental:
• Felony convictions;
• Violence, family relations, sex-related misdemeanors convictions; and
• Violence, family relations, and sex-related unclassified convictions."

The investigation revealed a misdemeanor class 1 charge on July 13, 2018, which was an assault in which the Complainant was found guilty and which the Complainant did not dispute with Leasing Desk.

The investigation showed that the property accepted an application on June 15, 2023, from a person who identifies as a Caucasian woman to rent Apartment 216.

The investigation revealed Respondent Camden NoDa has processed 20 applicants between February 3, 2023, and June 30, 2023. Of these 20 applicants, there were 3 denials, for rental history, credit history unsatisfactory, and rent to income, for 3 males whose races are unknown. Additionally, there were 15 approvals which consisted of 5 African American females, 1 African American male, 2 White females, and 7 race and gender unknown. The report also shows that 2 applicants whose race and gender are unknown were approved with conditions.

| Name | Date | Status | Reason | Race |
|------|------|--------|--------|------|
| Hope, Amber | 6/28/2023 | Approved | | African American |
| Lash, Brittney | 6/23/2023 | Approved | | Unknown |
| Munn, Jack | 6/20/2023 | Denied | Rent to income, credit history unsatisfactory - obtained guarantor | Unknown |
| House, Tamia | 6/8/2023 | Approved | | African American |
| Reader, Luther | 5/31/2023 | Approved | | African American |
| Nguyen, Khoi | 5/23/2023 | Approved with conditions | | Unknown |
| Mouliom, Binta | 5/16/2023 | Approved | | Unknown |
| Dallio, Hannah | 5/8/2023 | Approved | | White |
| Ham, Michael | 4/28/2023 | Approved | | UNDESIGNATED |
| Dyer, Elizabeth | 4/21/2023 | Approved | | Unknown |
| Cova, Saskia | 4/14/2023 | Approved | | Unknown |
| Holliday, Jonathan | 4/6/2023 | Denied | Rent to income, credit history unsatisfactory - obtained guarantor | Unknown |
| Rushing, Cathy | 3/28/2023 | Approved | | Unknown |
| Waldt, Terese | 3/20/2023 | Approved with conditions | | Unknown |
| Atawodi, Ojonoka | 3/9/2023 | Approved | | Unknown |
| Knox, Bianca | 3/1/2023 | Approved | | African American |
| Lynch, Hope | 2/24/2023 | Approved | | African American |
| Jones, Yolanda | 2/18/2023 | Approved | | African American |
| Qualls, Elizabeth | 2/12/2023 | Approved | | White |
| Smith, Paul | 2/3/2023 | Denied | Rental history, credit history unsatisfactory | Unknown |

The investigation confirmed the Complainant's case disposition date, July 13, 2018, was 4 years and 9 months from the April 24, 2023, application date.

The investigation showed that while the tenant who occupied the unit was Caucasian, the unit remained unleased until June 15, 2023.

## Conclusions

The conclusions for the Harmony Lowery vs. Camden NoDa, et al. investigation are written in three sections including 1) Prima Facia Case (PFC) elements for discriminatory refusal to rent based on race 2) PFC elements for Terms or Conditions: In Negotiating a Sale or Rental based on race and Disparate Impact Theory applied to the criminal background check practices of Respondent Camden NoDa.

### Discriminatory refusal to rent

This PFC suits a case in which the Complainant applied for and was denied the dwelling.

1. **The Complainant is a member of a protected class.**
   Yes. The Complainant identifies as African American.

2. **The Complainant applied for and was qualified to rent or purchase the dwelling.**
   No. The Complainant applied to rent the unit but did not meet the minimum qualifications for the criminal background check because of a violent misdemeanor charge that was less than 5

years old. The Respondent's Rental Criteria and Application was signed by the Complainant on April 24, 2023. The criteria provided to the Complainant states that the screening system takes into consideration criminal classifications which group criminal offenses into various categories and the length of time between the conviction and application date. The following convictions are considered significant crimes which will be taken into consideration when evaluating an applicant's eligibility for rental:

• Felony convictions;
• Violence, family relations, sex-related misdemeanors convictions; and
• Violence, family relations, and sex-related unclassified convictions.

**3. The Complainant's application was rejected.**
Yes. The Complainant's application was rejected by the Respondents. The investigation revealed an adverse action letter from the third-party company, Leasing Desk, dated April 24, 2023, stating they were unable to approve her application based on unsatisfactory criminal and other public records.

**4. The dwelling remained available thereafter.**
Yes. Respondent Camden NoDa accepted an application on June 15, 2023, and rented the apartment to a Caucasian woman.

Based upon the evidence set forth, there is **No Reasonable Cause** to believe that the Respondent violated the City of Charlotte's Fair Housing Ordinance Article V Section 12-111(1) or Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, Section 804(a). The determination only addresses the violations of the Fair Housing Act alleged in the complaint and does not address any potential violations of any other provision of the law.

**Terms or Conditions: In Negotiating a Sale or Rental. (Race)**

This PFC suits a case in which the Respondent subjects or proposes to subject the Complainant to different terms or conditions prior to a rental.

**1. The Complainant is a member of a protected class.**
Yes. The Complainant identifies as African American.

**2. The Complainant inquired about or applied for a dwelling from the Respondent.**
Yes. The Complainant applied to rent an apartment located at 515 Jordan Place, Apartment 216, Charlotte, NC 28205 on April 24, 2023. The property is owned by Respondent CUSA NC Holdings LP and is managed by Respondent Camden Development, Inc.

**3. The Respondent imposed unfavorable or less favorable terms or conditions on the Complainant.**
No. The investigation shows that the Respondent was acting in accordance with their standard business practice to process and screen applications through Respondent Camden NoDa's third-party screening company, Leasing Desk, for income, credit, rental, and criminal history. The Complainant expressed concern about the denial for criminal

background and the property management brought it to the attention of legal counsel. Legal counsel upheld the denial because it was a violence-related misdemeanor less than 5 years old.

Additionally, the Respondent provided a list of applicants between February 3, 2023, and June 30, 2023, who were denied, approved, and approved with conditions. There was a total of 20 applicants. Of these 20 applicants, there were 3 denials for rental history, credit history unsatisfactory, and rent to income, for 3 males whose races are unknown. Additionally, there were 15 approvals which consisted of 5 African American females, 1 African American male, 2 White females, and 7 race and gender unknown. The report also shows that 2 applicants whose race and gender are unknown were approved with conditions.

4. **The Respondent did not impose such terms or conditions on similarly situated inquirers/applicants, not of the Complainant's protected class.**
No. Respondent Camden NoDa began leasing on February 3, 2023. Complainant Lowery was the first applicant to apply for apartment 216. The Respondent provided an applicant list for February 3, 2023, through June 30, 2023, that showed applicants who were denied, approved, and approved with conditions. Complainant Lowery was the first applicant denied due to criminal background. Of these 20 applicants, there were 3 denials for rental history, credit history unsatisfactory, and rent to income, for 3 males whose races are unknown, and 15 approvals which consisted of 5 African American females, 1 African American male, 2 White females, and 7 race and gender unknown.

Based upon the evidence set forth, there is **No Reasonable Cause** to believe that the Respondent violated the City of Charlotte's Fair Housing Ordinance Article V Section 12-111(4) or Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, Section 804(b). The determination only addresses the violations of the Fair Housing Act alleged in the complaint and does not address any potential violations of any other provision of the law.

### Discriminatory Impact Theory

The Respondent has a facially neutral policy and practice that does not specify different treatment for protected classes. However, the use of a blanket criminal record policy or procedure to deny applicants with a criminal record, or a specific type of conviction, without an individualized, case-by-case assessment of the nature and severity of the crime, amount of time since the conviction, mitigating circumstances, and rehabilitation efforts, may lead to a disparate impact on a protected class due to disproportionate incarceration rates among certain groups including African Americans. The application clearly states that the screening system takes into consideration criminal classifications which groups criminal offenses into various categories and the length of time between the conviction and application date, and lists the convictions that are considered significant crimes which will be taken into consideration when evaluating an applicant's eligibility for rental. Additionally, the Respondents have a timeline of 5 years within the date of the rental application for circumstances in which certain convictions are excluded.

The conclusions for Discriminatory Impact Theory are written in 2 sections 1) identifying the housing provider's relevant practices or policies, both written and in practice, and 2) identifying

statistics that show whether the identified policies actually or predictably result in a disparate impact on a protected class.

1) HUD's 2016 Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions, encourages the use of an individualized approach to tenant screening on a case-by-case basis, to assess the nature, severity, and recency of the crime along with any rehabilitation efforts made. The investigation was unable to reveal evidence that the Respondent conducted or engaged the Complainant in an individualized assessment before sending the denial. The escalation of the complaint to their legal representative for a second look was due to the request of the Complainant. This suggests that all applicants with a criminal background conviction within 5 years of the application date are denied tenancy.

The 2016 HUD guidance states, "A housing provider with a more tailored policy or practice that excludes individuals with only certain types of convictions must still prove that its policy is necessary to serve a 'substantial, legitimate, nondiscriminatory interest.' To do this, a housing provider must show that its policy accurately distinguishes between criminal conduct that indicates a demonstrable risk to resident safety and/or property and criminal conduct that does not."

The investigation has not revealed a substantial, legitimate, nondiscriminatory interest of Respondent Camden NoDa for the practices described in this report including criteria set to automatically decline a violent misdemeanor charge and the denial of an applicant due, in part, to charges nearly 5 years old with no further inquiry of the individual regarding the nature or severity of the crime, mitigating circumstances, or rehabilitation efforts. The evidence provided by the Respondent has not proven through reliable evidence that their policies and practices regarding criminal records have assisted in protecting resident safety or property.

The 2016 HUD guidance states, "Where a policy or practice that restricts access to housing on the basis of criminal history has a disparate impact on individuals of a particular race, national origin, or other protected class, such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider, or if such interest could be served by another practice that has a less discriminatory effect."

2) Identification of statistics that show whether the policies actually or predictably result in a disparate impact on a protected class:

The Vera Institute of Justice works to ensure dignity and justice for people impacted by the criminal legal system. This organization has a team of hundreds of advocates, researchers, and policy experts and uses new tools and strategies from federal, state, and local advocacy and communications campaigns to expert data analysis and research to develop just, antiracist solutions.

According to the Vera Institute of Justice, as a nation, Black women constitute about 51% of the female population, but about 44% of those incarcerated. One in five Black people born in 2001

is likely to be incarcerated in their lifetime, compared to one in 10 Latinx people and one in 29 White people. The Vera Institute also reports that Black people are more likely to be stopped by the police, detained pretrial, charged with more serious crimes, and sentenced more harshly than White people.

When looking at the Vera Institute of Justice's report: *Incarceration Trends in North Carolina,* jail data shows that from 1990 to 2015, the Black incarceration rate has increased 13%. In 2015, Black people in North Carolina were incarcerated at 3.2 times the rate of White people. Prison data in North Carolina shows that from 1978 to 2017, the Black incarceration rate has increased by 39%. In 2017, Black people in North Carolina were incarcerated at 3.8 times the rate of White people.

According to the Vera Institute of Justice's *Incarceration Trends for Mecklenburg County, North Carolina,* Black/African American people make up 32% of the resident population in the county, but 68% of those in incarceration. Comparatively, White people make up 47% of the resident population, but 21% of those in incarceration. This data shows the Black/African American population is incarcerated at more than three times the rate of the White population in Mecklenburg County. Latinx people make up 12% of the resident population, but 9% of those in incarceration. This data is dated March 24, 2022.

Based on the evidence set forth, there *is Cause* to believe that the Respondent violated the City of Charlotte's Fair Housing Ordinance and Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988 on the use of criminal history due to the policy or practice having an unjustified discriminatory effect because of race, even if the provider had no intent to discriminate.

V.    Additional Information

Notwithstanding this determination by HUD, the Fair Housing Act provides that the Complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require that a dismissal, if any, be publicly disclosed unless the Respondent requests that no such release be made. Such request must be made by the Respondent within thirty (30) days of receipt of the determination to the Field Office of Fair Housing and Equal Opportunity at the address contained in the enclosed summary. Notwithstanding such request by the Respondent, the fact of dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained from:

DocuSign Envelope ID: EE491703-C95E-4D48-94C4-86C003DF771E

DocuSigned by:

*Terry Bradley*

12/01/2023

49BD4F92A8424B6...

Terry Bradley
Deputy Director
Charlotte-Mecklenburg Community Relations Committee
700 Parkwood Ave
Charlotte NC 28205

# EXHIBIT B



**Capitol Corporate Services, Inc.**
PO Box 1831
Austin, TX 78767
Phone: (800) 345-4647  Fax: (800) 432-3622
rassop@capitolservices.com

## Service Of Process Transmittal Notice

| | | |
|---|---|---|
| JOSH LEBAR<br>CAMDEN LIVING<br>11 GREENWAY PLZ STE 2400<br>HOUSTON TEXAS 77046 | **Date Processed:** | 04/21/2025 |
| | **Completed By:** | KAREN ROZAR |
| | **Delivery Method to Client:** | FEDEX 2 DAY |
| | **Tracking Number:** | 287781228605 |

Enclosed please find legal documents received on behalf of the client named below. These documents are being forwarded in accordance with your instructions.

| Date / Time Received<br>04/21/2025  1:30 PM in NORTH CAROLINA | Transmittal #<br>NC-301736 | Delivered to Agent by<br>CERTIFIED MAIL |
|---|---|---|

**With Regard to Client**
CAMDEN DEVELOPMENT, INC.

**Title of Case or Action**
CHARLOTTE-MECKLENBURG COMMUNITY RELATIONS COMMITTEE VS CUSA N.C. HOLDINGS, L.P.

| **Case Number**<br>25CV019059-590 | **Type of Document Served**<br>COMPLAINT/PETITION |
|---|---|

**Court Name**
IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION MECKLENBURG COUNTY

**Note**


1-301736E



7016 2070 0001 1668 9567



OFFICE OF THE CITY ATTORNEY
600 East Fourth Street
Charlotte, NC 28202

**CHARLOTTE.**

1300000000

Camden Development, Inc.
Reg. Agent: Capitol Corporate Services, Inc.
176 Mine Lake Ct., Ste. 100
Raleigh, NC 27615

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

File No.
25CV019059-590

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff | |

Charlotte-Mecklenburg Community Relations Committee

Address
600 East 4th St.

City, State, Zip
Charlotte, NC 28202

## VERSUS

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

Name Of Defendant(s)
CUSA N.C. Holdings, L.P.,

Camden Development, Inc., Steve Moore, and Samantha Morrison

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | | | Name And Address Of Defendant 2 | | |
|---|---|---|---|---|---|
| Samantha Morrison | | | Camden Development, Inc. | | |
| 515 Jordan Pl. | | | c/o Capitol Corporate Services, Inc. | | |
| | | | 176 Mine Lake Ct., Ste. 100 | | |
| Charlotte | NC | 28205 | Raleigh | NC | 27615 |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | | | Date Issued | | Time | | |
|---|---|---|---|---|---|---|---|
| Isaac Sturgill | | | 4/15/2025 | | 5:00:12 pm | ☐ AM | ☒ PM |
| Senior Assistant City Attorney | | | Signature | | /s/ Alexis Harper | | |
| 600 East 4th St., 7th Floor, Ste. 747 | | | | | | | |
| Charlotte | NC | 28202 | ☒ Deputy CSC | ☐ Assistant CSC | | ☐ Clerk Of Superior Court | |

| | Date Of Endorsement | | Time | | |
|---|---|---|---|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)** | | | | ☐ AM | ☐ PM |
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | | | | |
| | ☐ Deputy CSC | ☐ Assistant CSC | | ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

Case 3:25-cv-00337   Document 1-2   Filed 05/20/25   Page 29 of 32

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 1. ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 2. ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

Case 3:25-cv-00337    Document 1-2    Filed 05/20/25    Page 30 of 32

# STATE OF NORTH CAROLINA

File No.

25CV019059-590

_____ Mecklenburg _____ County

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| | | |
|---|---|---|
| Name And Address Of Plaintiff 1 | | |
| Charlotte-Mecklenburg Community Relations Committee | | |
| c/o Isaac Sturgill | | |
| 600 East 4th St., 7th Floor, Ste. 747 | | |
| Charlotte | NC | 28202 |
| Name And Address Of Plaintiff 2 | | |

**GENERAL**

**CIVIL ACTION COVER SHEET**

☒ **INITIAL FILING**   ☐ **SUBSEQUENT FILING**

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

**VERSUS**

| | | |
|---|---|---|
| Name And Address Of Defendant 1 | | |
| CUSA NC Holdings, LP | | |
| c/o Capitol Corporate Services, Inc. | | |
| 120 Penmarc Dr., Ste. 118 | | |
| Raleigh | NC | 27603 |
| Summons Submitted | | |
| ☒ Yes   ☐ No | | |

| | | |
|---|---|---|
| Name And Address Of Defendant 2 | | |
| Camden Development, Inc., et al. | | |
| c/o Capitol Corporate Services, Inc. | | |
| 176 Mine Lake Ct., Ste. 100 | | |
| Raleigh | NC | 27615 |
| Summons Submitted | | |
| ☒ Yes   ☐ No | | |

Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)
Isaac Sturgill
Assistant City Attorney
600 East 4th St., 7th Floor, Ste. 747

| | | |
|---|---|---|
| Charlotte | NC | 28202 |

| | |
|---|---|
| Telephone No. (980) 417-3057 | Cellular Telephone No. |

| | |
|---|---|
| NC Attorney Bar No. 44837 | Attorney Email Address isaac.sturgill@charlottenc.gov |

☒ Initial Appearance in Case   ☐ Change of Address

| | |
|---|---|
| Name Of Firm Office of the City Attorney | Fax No. N/A |

Counsel For
☒ All Plaintiffs   ☐ All Defendants   ☐ Only: (list party(ies) represented)

☒ Jury Demanded In Pleading   ☐ Complex Litigation   ☐ Stipulate to Arbitration

## TYPE OF PLEADING

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (list on back) (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other (specify and list each separately)

**NOTE:** All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

Electronically Filed Date: 4/15/2025 4:16 PM (Mecklenburg County Clerk of Superior Court
AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

| CLAIMS FOR RELIEF | | |
|---|---|---|
| ☐ Administrative Appeal (ADMA)<br>☐ Appointment Of Receiver (APRC)<br>☐ Attachment/Garnishment (ATTC)<br>☐ Claim And Delivery (CLMD)<br>☐ Collection On Account (ACCT)<br>☐ Condemnation (CNDM)<br>☐ Contract (CNTR)<br>☐ Discovery Scheduling Order (DSCH)<br>☐ Injunction (INJU) | ☐ Limited Driving Privilege - Out-Of-State<br>Convictions (PLDP)<br>☐ Medical Malpractice (MDML)<br>☐ Minor Settlement (MSTL)<br>☐ Money Owed (MNYO)<br>☐ Negligence - Motor Vehicle (MVNG)<br>☐ Negligence - Other (NEGO)<br>☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)<br>☐ Possession Of Personal Property (POPP) | ☐ Product Liability (PROD)<br>☐ Real Property (RLPR)<br>☐ Specific Performance (SPPR)<br>☒ Other (specify and list each separately)<br>Plaintiff seeks monetary relief for<br>Defendants' violations of the Federal<br>Fair Housing Act, NC Fair Housing Act,<br>and City of Charlotte's Fair Housing<br>Ordinance. |

| Date | Signature Of Attorney/Party |
|---|---|
| 04/15/2025 | /s/Isaac Sturgill |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☒ Additional Defendant(s)    ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| 3 | Samantha Morrison, 515 Jordan Pl., Charlotte, NC 28205 | ☒ Yes ☐ No |
| 4 | Steve Moore, 515 Jordan Pl., Charlotte, NC 28205 | ☒ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*